MOORE, Judge,
concurring in the result.
I concur that the judgment of the juvenile court is due to be affirmed, but not for any of the reasons set out in the main opinion, with which I largely disagree.
In order for the State to terminate parental rights, the State bears the burden of proving, by clear and convincing evidence, that the parent is “unable or unwilling to discharge [his or her] responsi *1214 bilities to and for the child, or that the conduct or condition of the parent[] renders [him or her] unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future.” § 12-15-319(a), Ala.Code 1975. In deciding whether those grounds exist, a juvenile court “shall consider the following factor[ ] ...: ... [t]hat reasonable efforts by the Department of Human Resources or licensed public or private child care agencies leading toward the rehabilitation of the parents have failed.” § 12-15-319(a)(7), Ala.Code 1975 (emphasis added). Although reasonable parental-rehabilitation and family-reunification efforts are not required in every case, see § 12 — 15—312(c), Ala.Code 1975, when they are a juvenile court has an imperative statutory obligation to consider whether those efforts have failed. See generally Ex parte Prudential Ins. Co. of America, 721 So.2d 1135, 1138 (Ala.1998) (“The word ‘shall’ is clear and unambiguous and is imperative and mandatory.”).
Arguably, in considering whether reasonable parental-rehabilitation efforts have failed as part of the termination-of-parental-rights proceeding, a juvenile court would have to decide, as an initial matter, the reasonable nature of those efforts. However, in cases in which a child has been removed from the family home and is receiving out-of-home care, the legislature intended that question to be resolved much earlier in an entirely different proceeding.
The legislature has established a goal for juvenile courts
“[t]o reunite a child with his or her parent or parents as quickly and as safely as possible when the child has been removed from the custody of his or her parent or parents unless reunification is judicially determined not to be in the best interests of the child.”
§ 12-15-101(b)(3), Ala.Code 1975. Pursuant to that goal, a juvenile court that has removed custody of a child from his or her parent or parents ordinarily should immediately develop a reasonable plan to reunite the family. See T.V. v. B.S., 7 So.3d 346, 361 (Ala.Civ.App.2008) (Moore, J., concurring in the result). That plan should be directed toward eliminating the problems that caused the family separation and should be implemented forthwith in a manner designed to achieve its purpose of reuniting the family. See H.H. v. Baldwin Cnty. Dep’t of Human Res., 989 So.2d 1094, 1104-05 (Ala.Civ.App.2007) (opinion on return to remand) (authored by Moore, J., with two judges concurring in the result) (outlining the steps that the State must take when using reasonable efforts to rehabilitate a parent and reunite a family). In formulating and promptly implementing a sound family-reunification plan, a juvenile court assures that a dependent child will spend the least amount of time outside the family home in an uncertain custodial arrangement. See generally A.D.B.H. v. Houston Cnty. Dep’t of Human Res., 1 So.3d 53, 69-73 (Ala.Civ.App.2008) (Moore, J., concurring in part and concurring in the result) (explaining public policy behind expediting the resolution of ancillary issues before the hearing to determine whether parental rights should be terminated).
To avoid unduly lengthening the unstable custodial situation for the child, if the juvenile court misdirects its efforts toward family reunification by crafting a plan that fails to address the problems causing the separation of the family, that error should be immediately brought to its attention, but certainly no later than the permanency hearing, which is to be held at least within 12 months of the date the child is removed from home. See § 12-15-315(a), Ala.Code 1975. The legislature envisioned that, by the time of the permanency hearing, the *1215 juvenile court would be in a position to assess the viability of family reunification and to establish an end date for accomplishing that reunification or to redirect its efforts toward another permanent custodial arrangement for the child, if necessary. See A.D.B.H., 1 So.3d at 69-73 (Moore, J., concurring in part and concurring in the result). In essence, the permanency hearing provides the last opportunity for the juvenile court to refine the family-reunification plan. Thus, as this court has held, any lingering problems with the family-reunification plan must be finally resolved at that hearing. See D.P. v. Limestone Cnty. Dep’t of Human Res., 28 So.3d 759, 763 (Ala.Civ.App.2009) (stating that permanency hearings are intended to address “issues such as ... the reasonableness of [the Department of Human Resources’] efforts to rehabilitate a parent”).
In this case, A.M.F. (“the mother”) does not claim that the Tuscaloosa Juvenile Court (“the juvenile court”) failed to provide her with a permanency hearing or an earlier opportunity to object to the family-reunification plan. The mother simply argues that the plan was defective from its inception because it did not provide any means for rectifying her housing and employment problems and that, essentially, the juvenile court should not have terminated her parental rights without first restarting the family-reunification process with a more comprehensive plan. I agree with the mother that any reasonable plan for family reunification would have addressed her housing and employment problems, which, according to Rhonda Lee, the foster-care worker assigned to the case, formed the primary barriers to reuniting the mother and the child. However, I cannot agree that the juvenile court erred in failing to acknowledge those defects at the hearing on the petition to terminate the parental rights of the mother. The question of the reasonableness of family-reunification efforts had long been foreclosed by the time of that hearing and could not be revived or reconsidered at that time.
“Parental rights are indeed cherished and deserve the law’s utmost protection against unwarranted interference.” Ex parte Beasley, 564 So.2d 950, 954 (Ala.1990). The law provided the mother with a method by which she could have assured that the State used reasonable efforts to reunite her family. Had the mother cherished her parental rights, she should have availed herself of that process and insisted on a more tailored reunification plan. The record does not disclose any efforts the mother made in that regard before the hearing on the petition to terminate her parental rights. The mother could not use that forum to complain of the reasonableness of the family-reunification plan, and this court cannot reverse the judgment of the juvenile court for failing to take corrective action at that late stage of the proceedings. Hence, for those reasons alone, I concur that the judgment of the juvenile court should be affirmed.